UNION-DAVENPORT TRUST & SAVINGS BANK, Appellee, v. MATT LYONS et al., Appellees; A. B. SHRIVER, Appellant.

MORTGAGES: Validity—Forgery—Proceeds Used to Pay Former Mortgage—Subrogation. A grantee who buys land for a nominal consideration, and agrees to pay, as part of the purchase price, an existing mortgage, but with the secret intention of defeating the mortgage on the plea that it was a forgery, may not complain that the court, in foreclosure proceedings, accepted his plea of forgery, but subrogated the foreclosing plaintiff to the rights of a former mortgage *which was discharged with the proceeds of the forged mortgage,* and of which said grantee had knowledge; nor might said grantee have complained, had the court enforced the forged mortgage, in view of proof that the forgery had been fully ratified by the injured party before grantee bought the land.

Headnote 1: 37 Cyc. p. 382 (Anno.)

*Appeal from Madison District Court.*—W. S. COOPER, Judge.

FEBRUARY 15, 1927.

Suit by plaintiff, to foreclose a first mortgage upon real estate, for $4,000. A cross-petition by the defendant I. C. Welty against his codefendants, to foreclose a second mortgage upon the same real estate. No controversy is presented between the plaintiff and this cross-petitioner. Defendant Matt Lyons was the purported mortgagor of the two mortgages. The defendant Joe Lyons was the subsequent grantee of Matt Lyons, who assumed and agreed to pay both mortgages. The defendant Shriver is the purported present owner of the real estate. The defendants Matt Lyons and his wife, Anna, and the defendant Shriver each denied the validity of the mortgages sued on, and alleged them to be unauthorized, and forgeries. The plaintiff and the cross-petitioner prayed in the alternative that, if the

mortgages should be found invalid, they should be subrogated to the lien of a previous mortgage which had been paid off with the proceeds of the mortgages now sued on. Decree was entered, awarding to the plaintiff and to the cross-petitioner the right of subrogation to the lien of such previous mortgage, and adjudging the amount which each was entitled to have established as a lien. Only the defendant Shriver has appealed.—*Affirmed*.

*Phil R. Wilkinson* and *Leo C. Percival*, for appellant.

*Musmaker & Musmaker*, for Union-Davenport Trust & Savings Bank, appellee.

*C. E. Hamilton* and *Soper & Welty*, for I. C. Welty, appellee.

*J. H. Patton*, for Matt Lyons and Anna Lyons, appellees.

EVANS, C. J.—The plaintiff was the assignee of the Davenport Savings Bank, which was the mortgagee in the mortgage sued on. This mortgage was for $4,000, bearing date March 1, 1922, and covering a 100-acre farm located in Madison County, near Winterset. The mortgage of the cross-petitioner was for $3,000, bearing the same date and covering the same land, but was made junior to the plaintiff's mortgage. On and prior to this date, the cross-petitioner was the holder of a first mortgage for $6,500, covering the same farm. This mortgage, with interest accrued and taxes paid, amounted, on March 1, 1922, to $7,002. The two mortgages in suit were negotiated for the purpose of paying off the $6,500 mortgage, and the proceeds thereof were so used, and such previous mortgage was released of record. On this date, the holder of the record title to this farm was Matt Lyons, who lived at Grinnell, Iowa. He acquired the farm by deed in December, 1916. His grantor, Runner, was the mortgagor in the $6,500 mortgage. In his conveyance, Matt Lyons, as grantee, expressly assumed the payment of such mortgage. He testified that he bought the land for his son George, and turned it over to him with the understanding that he should pay the mortgage and "own the land." This son, known in the record as George M. Lyons, on and for some time prior to March 1, 1922, was occupying this farm and claiming to be the owner

thereof. Prior to such date, he had listed this farm for sale in his own name with the witness Hamilton, who was a real-estate-and-loan agent of Winterset. The Davenport Savings Bank and the cross-petitioner, Welty, were nonresidents of Madison County, the latter residing at Nevada, Iowa. Welty, desiring to realize a partial payment upon his mortgage, wrote to the witness Hamilton, at Winterset, suggesting the possibility of negotiating a first mortgage loan to the owner of the farm for such an amount as could be obtained, and proposing to accept a second mortgage for the balance due him, after his receipt of the proceeds of the first mortgage loan. Hamilton immediately conferred with George M. Lyons, relying upon Lyons's claim to be the owner of the farm, which he was then occupying. Lyons assented to the proposal. Hamilton thereupon wrote to the Davenport Savings Bank, proposing to make a contemplated first mortgage real estate loan of $4,000. The money for the proposed loan appears to have been remitted by the Davenport Savings Bank to Hamilton, without previous investigation or knowledge by the home officers of the identity of the particular loan to be made. The matter of carrying out the proposal of a loan appears to have been fully intrusted to Hamilton himself. An examination of the record title disclosed that the title was in Matt Lyons. George M. Lyons represented to Hamilton that such was the name by which he was known in the community in which he had previously lived. He thereupon executed the two mortgages for $4,000 and $3,000, respectively, signing and acknowledging the same as "Matt Lyons." His wife, Elva, joined in the mortgages. Hamilton paid the proceeds of the first mortgage loan to Welty, and sent the mortgage to the mortgagee. He sent the second mortgage of $3,000 to Welty, who accepted the same, pursuant to his former proposal. The defense of Shriver herein is predicated upon the want of authority in George M. Lyons to execute the mortgages in question. Matt Lyons testified, as a witness, that he had expressly refused his consent to the making of such mortgages, upon a proposal made to him by his son, George. This testimony is not disputed. George Lyons was not a witness. Subsequent events, however, become significant. Sometime after March 1, 1922, and while he was still the holder of the record title to the farm, he (Matt Lyons) was informed that the $6,500 mortgage had been changed into two mortgages

of $4,000 and $3,000, respectively. The fair inference from the record is that he obtained this information from his son George. He did not repudiate. On the contrary, in November, 1923, he conveyed this farm to his son Joe for the sole consideration that Joe would pay these mortgages. Both grantor and grantee knew of the mortgages at the time. The deed recited a consideration of $1.00, and was made "subject to a mortgage indebtedness of $8,000 and the unpaid taxes, all of which the grantee assumes and agrees to pay for the purchase price of said premises." At this time, the two mortgages amounted approximately to $8,000.

In September, 1924, pursuant to negotiations with the defendant Shriver, Joe Lyons and his wife executed a deed in blank as to the name of the grantee, and delivered the same to the defendant Shriver for the consideration of $500. This deed purported to be "subject to mortgages of record and back interest and taxes." According to his own testimony, Shriver actually knew of these two mortgages in suit and of the previous $6,500 mortgage, and took the deed with the then purpose to contest the validity of the mortgages. He testified: "I knew I would have a lawsuit before I got it." His claim of ownership is predicated upon the blank deed herein mentioned.

Upon the foregoing facts, were the plaintiff and the cross-petitioner entitled to the relief awarded? The case has been extensively argued by the appellant. His attack is mainly upon the theory upon which the court rendered relief. This theory was that these parties were entitled to subrogation to the previous lien of the previous $6,500 mortgage. The legal questions presented are not wanting in interest, but the ultimate result to be reached, upon a consideration of the case, stands out so prominently that fair minds could not differ thereon. If we deemed the district court wrong in its theory, and still right in the result reached, we should have to sustain it.

It is manifest, upon the record, that there are more theories than one upon which the decree of the district court could be sustained. The testimony of Matt Lyons discloses that he bought the farm for his son George, and put him in possession of it, with an understanding that he was to pay the mortgage and "own the land." This fact undoubtedly accounts, in a measure, for the action of George in claiming to be the owner of the land.

If George had actually paid the $6,500 mortgage, he would thereby have fulfilled his contract with his father, and would have been entitled to a conveyance of the land. The mortgages executed by him were good, as against him, and could have been foreclosed as against his interest. His interest was subject to the payment of the previous mortgage, and to nothing more. This mortgage having been satisfied, this, on the face of it, worked a performance of the contract by George, as between him and his father. The satisfaction of that mortgage was the only consideration which the father demanded for a conveyance of the farm, according to his own testimony. If no other interest, therefore, were involved than that of Matt Lyons, the mortgagees could have foreclosed their mortgages as against George, and could have had specific performance as against Matt, as one who had received the stipulated consideration for a conveyance. But other interests intervened, and these must be considered.

On November 30, 1923, the son Joe became the owner by conveyance from his father. Both of them knew of these mortgages, and had them in contemplation. The only consideration for this conveyance was the promise of Joe to pay such mortgages. Even if we grant, then, that George M. was not authorized to execute the mortgages in his father's name, and was not authorized to use such name as his own, yet, with knowledge of what was done, and, of legal necessity, with knowledge of the benefit which had accrued to him thereby, in the discharge of the $6,500 mortgage upon which he was personally liable, the father at all times failed to repudiate. To fail to repudiate was to ratify, where substantial benefits had resulted to him from the transaction. He could not claim the benefits of the release of his obligation and still repudiate the agency that accomplished it. The fact that he sold the land to the son Joe for the express consideration of the payment of such mortgages by Joe, was an act of express ratification on the part of the father, and an express promise to pay on the part of Joe.

It is clear, therefore, that neither Matt nor Joe had any valid defense which they could interpose against these foreclosures. Nor have they appealed.

It remains to consider the case of Shriver. Does the record disclose any equities in his favor, superior to those of his grant-

or? He is neither an *innocent* purchaser nor a purchaser for value. He had actual notice of the claims of these mortgagees. The price paid by him was quite nominal. It did not approximate the value of the land. He parted with $500 as a mere wager, though it was quite a secure one. He received immediate possession, which included a part of the rent of 1924 and all of that of 1925. Professedly, by his own testimony, he bought a "lawsuit." Clearly, his rights are measured by those of his grantor. The record does not disclose a single equitable consideration in his favor.

The district court awarded decree to the plaintiff and cross-petitioner on the theory of a right of subrogation to the lien of the discharged mortgage. In the adoption of such theory, we think the court did not err, although it involved somewhat more intricacy than the theory of ratification. We see nothing to be gained by a discussion of the subject of subrogation. On any theory, only one result can properly be reached in this case.

The decree of the district court is, accordingly,—*Affirmed.*

DE GRAFF, ALBERT, and MORLING, JJ., concur.